IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 10-00336-TUC-FRZ (JCG) |
| Plaintiff, | **REPORT AND RECOMMENDATION ON MOTION TO DISMISS** |
| vs. | |
| Asencion Alcantar-Mendivil, | |
| Defendant. | |

Pending before the Court is a Second Motion to Dismiss filed by Defendant. (Doc. 33.) Defendant seeks dismissal of the Indictment, pursuant to the Fifth Amendment right to due process and the Sixth Amendment right to compulsory process, on the grounds that the government deported a witness who had material and favorable testimony to the defense. The government filed responses to the Motion. (Docs. 35, 46.)   This matter came before the Court for a hearing and a report and recommendation as a result of a referral made on January 20, 2010, pursuant to LRCrim 5.1.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2010, Defendant Asencion Alcantar-Mendivil was indicted for possession with intent to distribute 48.4 kilograms of marijuana in violation of Title 21, United States Code, Section 841(a)(1) and 841 (b)(1)(D).  According to the complaint,

1  Border Patrol agents using night vision equipment observed four individuals, three of whom
2  were carrying bundles on their backs, loading bundles into the trunk of a vehicle. One of the
3  individuals entered the passenger side of the vehicle. The other three ran into the brush.
4  After agents stopped the vehicle, Defendant, the driver, consented to a search of the trunk
5  and agents found five bundles of marijuana. Defendant and the passenger of the vehicle were
6  arrested. The passenger, who apparently was a juvenile, was not charged and was later
7  deported. He was not interviewed - either after his arrest or prior to his deportation.

8  Defendant moved to dismiss the charges against Defendant with prejudice because
9  the juvenile passenger was deported. Defendant's Motion was heard on February 4, 2011.[1]
10  Defendant was present and represented by counsel.

11  Just prior to the hearing, on January 31, 2011, Defendant caused a subpoena to be
12  served on Assistant United States Attorney Gordon Davenport; the subpoena commanded
13  Davenport's appearance to testify at the February 4, 2011, hearing. The government moved
14  to quash the subpoena (Doc. 54), indicating that Davenport would not be able to provide
15  testimony regarding the deportation of the witness. The Magistrate granted the Motion to
16  Quash. (Doc. 55.)

17  At the hearing on February 4, 2011, Defendant requested that the Magistrate Judge
18  reconsider her order quashing the subpoena. Defendant argued that Davenport's testimony
19  was necessary to show: (1) the government did not act according to its policies of prosecution
20  and deportation; and (2) whether there is a policy regarding the taking of statements from co-
21  defendants. According to the Defendant, Davenport's declination of prosecution amounted
22  to a decision to deport. The Magistrate denied the request for reconsideration. The
23  Defendant had no further witnesses in support of his Motion to Dismiss.

---

[1] This motion was originally set for evidentiary hearing on January 20, 2011. The hearing was continued to enable Defendant time to subpoena witnesses to meet his burden of proof. (Doc. 45.)

- 2 -

Because the Defendant failed to meet his burden of proof, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Second Motion to Dismiss.

## ANALYSIS

The right to retain a deportable alien witness is based upon the Fifth Amendment guarantee of due process and the Sixth Amendment guarantee of compulsory process for obtaining witnesses in one's favor. *See United States v. Medina-Villa*, 567 F.3d 507, 517 (9th Cir. 2009). The Supreme Court has narrowly construed the right, setting forth a two-pronged test for determining whether the government unconstitutionally deported witnesses. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). Defendant must make an initial showing that (1) the Government acted in bad faith and (2) this conduct resulted in prejudice to the defendant's case. *Medina-Villa*, 567 F.3d at 517. To establish that the government acted in bad faith, Defendant must show either that the Government departed from normal deportation procedures or that the Government deported the witness to gain an unfair tactical advantage over him at trial.[2] *See id.* To demonstrate prejudice, the defendant must "make a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Id.* The Supreme Court recognized the difficulty for "a defendant who has not had an opportunity to interview a witness ... in making a showing of materiality," and suggested the defendant may draw on "the events to which a witness might testify, and the relevance of those events to the crime charged." *Valenzuela-Bernal*, 458 U.S. at 871.

Defendant failed to make an initial showing that (1) the government acted in bad faith and (2) this conduct resulted in prejudice to the Defendant's case. There was no evidence to

---

[2] Defendant's assertion that the prosecution is required to make a determination as to whether the witness possesses any information favorable to the defense prior to deportation is incorrect. *See United States v. Dring*, 930 F.2d 687 (9th Cir. 1991) (rejecting claim that the Government may deport aliens if and only if it first questions them, or otherwise makes a good faith determination that they are not material and favorable eyewitnesses).

- 3 -

1  establish that the government departed from normal deportation procedures. No witnesses
2  were called. Although Defendant intended to establish bad faith through AUSA Davenport's
3  testimony, the AUSA would not have been able to testify as to deportation procedures or the
4  circumstances of the deportation decision made in this case. Davenport was not involved in
5  the decision to deport the juvenile. At the hearing, Defense counsel acknowledged this and
6  indicated that the testimony being sought from Davenport related to prosecution policies.
7  While the decision to decline prosecution may lead immigration officials to initiate
8  deportation proceedings, decisions regarding immigration are not tied solely to prosecution;
9  the responsibility for making decisions regarding immigration is charged to immigration
10 officials, not to prosecutors.

11  There was also no evidence that the juvenile was deported to gain unfair tactical
12 advantage. The juvenile was not interviewed and there is no evidence that he made any
13 statements - favorable or unfavorable - or that any statements were alleged to be
14 communicated to the AUSA.

15  Defendant also failed to demonstrate prejudice. There was no evidence that the
16 testimony of the deported juvenile would have been material and favorable to the defense,
17 in a way not merely cumulative to the testimony of Defendant. Defendant contends that the
18 juvenile passenger could have testified that the vehicle Defendant was driving was not the
19 vehicle that the passenger had been waiting for, and that Defendant fought and argued with
20 the juvenile as he forced his way into the vehicle. According to Defendant, such testimony
21 would corroborate Defendant's claim that the passenger did not match the description of the
22 undocumented alien Defendant intended to pick up and that Defendant and did not know that
23 marijuana had been loaded into his vehicle until after he was arrested.

24  Defendant's suggested scenario is improbable and ignores the juvenile's role in the
25 marijuana smuggling. The juvenile was part of the group of backpackers who carried
26 marijuana into the United States. The group placed the marijuana in the open trunk of
27 Defendant's car when it pulled over and stopped on the dark, deserted road where they were
28 waiting. Contrary to Defendant's assertion, the group must have believed that the

1  Defendant's vehicle was in fact the car that they were to load with the marijuana. And even
2  if the juvenile testified that the Defendant did try to push him out of the car, it would not
3  establish Defendant's reason for doing so. Defendant may have been pushing the juvenile
4  out of the car because Defendant believed he was to pick up only the marijuana. Moreover,
5  to the extent, the juvenile could testify that the Defendant said the juvenile was not the
6  undocumented alien he was there to pick up, the juvenile's testimony would be merely
7  cumulative of Defendant's testimony to that same effect. In sum, under each of these
8  scenarios, the expected testimony would not be material and favorable to the defense or
9  would be merely cumulative to Defendant's testimony. Significantly, given the juvenile's
10 involvement in the marijuana smuggling, if the juvenile had been charged and not deported
11 from the United States, it would be unlikely that he would waive his own Fifth Amendment
12 rights to provide testimony in Defendant's trial.

13 "As in other cases concerning the loss of material evidence, sanctions will be
14 warranted for deportation of alien witnesses only if there is a reasonable likelihood that the
15 testimony could have affected the judgment of the trier of fact." *United States v. Dring*, 930
16 F.2d 687, 694-95 (9th Cir. 1991) (citing *United States v. Bagley*, 473 U.S. 667, 681-82
17 (1984)). As Defendant has failed to demonstrate bad faith or prejudice, no such sanction is
18 warranted. Thus, the Magistrate Judge recommends that the District Court deny Defendant's
19 Second Motion to Dismiss.

## RECOMMENDATION

21 In view of the foregoing, it is recommended that, after its independent review of the
22 record, the District Court DENY the Second Motion to Dismiss filed by Defendant on
23 December 9, 2010. (Doc. 33.)

24 The parties have **fourteen (14) days** to serve and file written objections to the Report
25 and Recommendation. The parties are advised that any objections should be filed with the
26 following caption: **CR 10-00336-TUC-FRZ**.

27 DATED this 7th day of February, 2011.

Jennifer C. Guerin
United States Magistrate Judge